UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE KRUMM, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:19 CV 182 CDP |
| v. | ) ) | |
| KITTRICH CORPORATION, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

In this putative class action, named plaintiff Christine Krumm claims that

defendant Kittrich Corporation violated various federal and Missouri state

consumer protection laws by marketing and selling an ineffective insect repellant.

Krumm seeks class certification for a nationwide class consisting of all non-resale

purchasers of the allegedly ineffective repellant, and a subclass consisting of all

class members who purchased the repellant in Missouri.  Pending before the Court

is Kittrich's motion to dismiss for lack of subject-matter jurisdiction, lack of

personal jurisdiction, and failure to state a claim.  For the reasons discussed below,

I am denying the motion to dismiss on all grounds, except as to Count IV of

Krumm's complaint.

## Background

Defendant Kittrich manufactures and sells EcoSMART Insect Repellant. The repellant consists of a formula of "naturally occurring active ingredients" which the Environmental Protection Agency classifies as "minimum risk pesticides." Def.'s Memorandum, ECF 14 at pg. 1. The repellant comes in a handheld spray bottle, labelled front and back with information and instructions. In relevant part, the repellent's front label states: "KEEPS AWAY MOSQUITOES, TICKS & GNATS!" The back label reads: "EcoSMART Insect Repellent is made from a proprietary blend of plant oils. It repels for hours. It's safe, it's effective. It's smart – Naturally." Below this introduction is an instructional paragraph, which directs users to "[a]pply every 2-3 hours or as needed as effectiveness varies with excessive perspiration." The back label also contains the following disclaimer:

> **LIMITATION OF LIABILITY**: To the extent consistent with applicable law, Kittrich makes no warranties of merchantability or of fitness for a particular purpose, nor any other express or implied warranty except as stated above. Buyer assumes all responsibility for safety and use not in accordance with label, directions and precautionary statements.

Plaintiff Krumm alleges she purchased a bottle of the repellant for approximately $6.00 from a Shop 'n Save retail store in the Summer of 2016. Complaint, ECF 1 at pg. 5. Krumm maintains she "carefully read" the repellant's labelling before making the purchase, and that she "used the [repellant] according

2

to its directions and the [repellant] was ineffective to repel mosquitos."

Consequently, she alleges she "would not have purchased the [repellant] at all," or

would have only bought it for a "substantially reduced price."  Krumm brings six

counts against Kittrich under federal and Missouri state law stemming from the

alleged misrepresentations of the repellant's efficacy.

### Kittrich's Motion to Dismiss

Kittrich seeks to dismiss Krumm's complaint under Federal Rules of Civil

Procedure 12(b)(1), 12(b)(2), and 12(b)(6).  First, Kittrich contends Krumm lacks

standing to sue, thus the Court should dismiss the case in its entirety for lack of

subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  In support, Kittrich argues 1)

Krumm fails to adequately allege that she suffered a cognizable injury in fact, and

2) her claim is moot because of a pre-litigation tender of payment.  Second,

Kittrich challenges the factual sufficiency of Krumm's pleadings, and contends

that three of Krumm's six counts should be dismissed due to various procedural

and/or substantive deficiencies.  Fed. R. Civ. P. 12(b)(6).  Finally, Kittrich asserts

that the Court should dismiss Krumm's claims on behalf of the nationwide class

for lack of personal jurisdiction over the out-of-state (i.e. non-Missouri)

purchasers.  Fed. R. Civ. P. 12(b)(2).  I will exercise my discretion to consider

Kittrich's jurisdictional challenges first because its Rule 12(b)(6) defenses are

moot if the Court lacks subject-matter or personal jurisdiction.  *See Siegfried v.*

*Boehringer Ingelheim Pharm., Inc.*, No. 4:16 CV 1942 CDP, 2017 WL 2778107, at *2 (E.D. Mo. June 27, 2017).

A. <u>Subject Matter Jurisdiction</u>

Kittrich first moves to dismiss Krumm's complaint under Rule 12(b)(1) for lack of standing.  Specifically, Kittrich argues Krumm has not adequately alleged that she suffered a 'concrete and particularized' injury in fact.  The injury in fact requirement is one of three elements of the "irreducible constitutional minimum of standing[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560).

By attacking the sufficiency of Krumm's pleadings, Kittrich presents a facial challenge to the Court's jurisdiction.  A facial attack, as opposed to a factual attack, is when a movant "asserts that the [challenged pleading] fails to allege sufficient facts to support subject matter jurisdiction." *Davis v. Anthony, Inc*., 886 F.3d 674, 679 (8th Cir. 2018) (internal citations omitted).  When confronted with a facial challenge under Rule 12(b)(1), the Court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop,*

4

*Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citation omitted).  In other words, "all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction."  *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

In light of this standard, Krumm has adequately alleged a cognizable economic injury in fact.  Krumm alleges she personally read the repellant's label and purchased a bottle in reliance of its representation that it repels mosquitos.  Krumm further alleges she "used the [repellant] according to its directions and the [repellant] was ineffective[1] to repel mosquitos."  Krumm's pleaded injury is therefore particularized—she alleges the specific repellant she purchased and used did not, in fact, repel mosquitos.  *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011); *O'Neil v. Simplicity, Inc*., 574 F.3d 501, 503 (8th Cir. 2009) (holding plaintiffs must allege that their product exhibited the alleged defect in order to establish standing).  Further, Krumm's injury is concrete; Krumm alleges she relied on the repellant's label in deciding to buy the repellant, that the repellant's labels were false or misleading, and that she would not have

---

[1] Kittrich takes issue with Krumm's use of the word "ineffective" to describe the repellant because she did not clearly state she was bitten by mosquitoes, nor further elaborate on the meaning of the word as used in her complaint.  ECF 14 at pg. 6.  Krumm need not explicitly state she was bitten by mosquitos, nor specify the precise number of bites she received, for me to draw a reasonable inference that "ineffective" means the repellant did not prevent mosquitoes from biting her when she used it as instructed.

purchased the repellant had she known the labels were false or misleading.  These

allegations are sufficient to establish an economic injury in fact:

> [Plaintiff] claims that his economic injury stems from Defendant's
> false, misleading, or deceptive labeling practices, and that he would
> not have purchased the product had he known that the labels were
> false or misleading. Furthermore, Plaintiff's complaint alleges that he
> saw the labels and relied on them in making his purchasing decision.
> This is sufficient to support standing.

*Johnson v. Atkins Nutritionals, Inc.*, No. 2:16-CV-04213-MDH, 2017 WL

6420199, at *3 (W.D. Mo. Mar. 29, 2017); *see also Wallace v. ConAgra Foods

Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014) ("When the alleged harm is economic,

the 'injury in fact' question is straightforward.").  Accordingly, because Krumm

has standing to sue individually, the class action may proceed: "The requirements

for standing do not change in the class action context.  A putative class action can

proceed as long as one named plaintiff has standing."  *In re SuperValu, Inc.*, 870

F.3d 763, 768 (8th Cir. 2017) (internal citations omitted).

Alternatively, Kittrich contends Krumm's individual claims were rendered

moot by a pre-litigation tender of payment, thus the Court should dismiss for lack

of subject-matter jurisdiction.  The mootness doctrine requires proof of an actual,

justiciable controversy at the time a plaintiff files suit:  "In order to invoke federal-

court jurisdiction, a plaintiff must demonstrate that he possesses a legally

cognizable interest, or personal stake, in the outcome of the action."  *Genesis

Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (internal quotations

6

and citation omitted).  On November 16, 2018, Kittrich mailed Krumm a certified

$20.00 cashier's check to "cover all costs in purchasing the [repellant]."  Aff. of

Priscilla Sambrano, ECF 14-1 at pg. 3.  The value of the check was "three times

the value of a full refund," so Kittrich argues Krumm was made "(more than)

whole" before she filed suit.  Krumm rejected the check and returned it to Kittrich;

accordingly, she contends her individual and class-wide claims are unaffected by

the tender of payment.  The facts are undisputed, so the sole issue is a legal

question:  Whether issuing a consumer an unsolicited and unaccepted refund

before she files suit preemptively moots her individual claims in a subsequently

filed class action.

The Supreme Court has held that a plaintiff's individual claim in a putative

class action is not rendered moot by a rejected settlement offer and simultaneous

offer of judgment under Rule 68:

> When a plaintiff rejects such an offer—however good the terms—her
> interest in the lawsuit remains just what it was before. And so too does
> the court's ability to grant her relief. An unaccepted settlement offer—
> like any unaccepted contract offer—is a legal nullity, with no
> operative effect. As every first-year law student learns, the recipient's
> rejection of an offer leaves the matter as if no offer had ever been
> made. . . So assuming the case was live before—because the plaintiff
> had a stake and the court could grant relief—the litigation carries on,
> unmooted.

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670 (2016) (citing *Genesis*

*Healthcare*, 133 S. Ct. at 1533 (Kagan, J. dissenting) (citation and internal

7

quotations omitted)).  This Court subsequently extended *Campbell-Ewald*'s logic to deny a defendant's attempt to 'pick off' a named plaintiff's individual claim through a rejected tender offer of settlement.  *Getchman v. Pyramid Consulting, Inc.*, No. 4:16 CV 1208 CDP, 2017 WL 713034, at *3 (E.D. Mo. Feb. 23, 2017); *see also Giesmann, MD, P.C. v. American Homepatient, Inc.*, No. 4:14 CV 1538 RLW, 2016 WL 3407815, at *3 (E.D. Mo. June 16, 2016) (applying *Campbell– Ewald* and finding "no principled difference between a plaintiff rejecting a *tender* of payment and an *offer* of payment.").

Kittrich argues these cases are inapplicable, or otherwise distinct, because they do not specifically address pre-litigation tenders of payment.  I disagree.  The central holding of *Campbell-Ewald* is straightforward; a rejected settlement offer "creates no lasting right or obligation" in the offeree.  *Campbell-Ewald*, 136 S. Ct. at 666.  Likewise, a rejected tender of payment, like a rejected settlement offer, is a "legal nullity, with no operative effect."  *Getchman*, 2017 WL 713034, at *3 (quoting *Campbell-Ewald*, 136 S. Ct. at 670).  The existence or non-existence of active litigation simply has no bearing on the basic contractual principle that a rejected offer is null as to the offeree.  Moreover, "if I were to accept that a defendant's rejected tender of payment moots a plaintiff's individual claims, '[d]efendants would essentially have control of the putative class.'" *Getchman*, 2017 WL 713034, at *3 (quoting *Giesmann*, 2016 WL 3407815, at *3).  The same

8

concern is present here; whether a defendant attempts to 'pick off' an active claim or prevent a plaintiff from suing in the first place, "[t]he law does not countenance the use of individual offers to thwart class litigation[.]"  *Id*.

In any event, a case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Campbell-Ewald*, 136 S. Ct. at 663 (quoting *Knox v. Service Employees*, 132 S. Ct. 2277, 2287 (2012)). In addition to monetary damages, Krumm requests equitable relief in the form of an order enjoining Kittrich from continuing its alleged "illegal practices" and an order compelling Kittrich to undertake a corrective advertising campaign. Kittrich's tender of payment did not state that it would cease making misrepresentations on its repellant, nor undertake a corrective advertising campaign.  Accordingly, for this reason and the reasons stated above, Krumm's claims are not rendered moot by the rejected tender of payment and Kittrich's motion to dismiss under Rule 12(b)(1) is denied in full.

B. Personal Jurisdiction

Next, Kittrich moves to dismiss Krumm's claims under Rule 12(b)(2) for lack of personal jurisdiction.  Personal jurisdiction takes two forms:  "'[G]eneral' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."  *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)).  Krumm's

complaint alleges only that the Court has general personal jurisdiction;[2] however,

Kittrich is incorporated and has its principal place of business in California.

Consequently, this Court could only exercise general jurisdiction if Kittrich's

contacts were so "continuous and systematic as to render [it] essentially at home"

in Missouri.  *Goodyear*, 564 U.S. at 919 (citation and internal quotations omitted).

Krumm's unsubstantiated allegation that Kittrich "conducts substantial business

within Missouri" does not satisfy the demanding standard necessitated by

*Goodyear*, so this Court cannot exercise general jurisdiction over Kittrich.

Krumm's complaint nonetheless contains allegations sufficient to establish

the Court's specific jurisdiction over her individual claims.  This Court may

exercise specific jurisdiction over an out-of-state defendant if 1) the exercise of

jurisdiction is permitted by the Missouri long-arm statute, and 2) the reach of the

long-arm statute comports with due process.  *Viasystems, Inc. v. EBM-Papst St.*

*Georgen GmbH & Co., KG*, 646 F.3d 589, 593-94 (8th Cir. 2011).  Missouri's

long-arm statute authorizes personal jurisdiction over corporate defendants who

transact business within the State.  Mo. Rev. Stat. § 506.500.1(1).  With regard to

---

[2] "This Court has personal jurisdiction over Defendant Kittrich Corporation because Defendant's principal place of business is in this District and because Defendant conducts substantial business within Missouri such that Defendant has significant, continuous, and pervasive contacts with the State of Missouri."  ECF 1 at pg. 6, ¶ 11.  Krumm incorrectly states Kittrich's principal place of business here, but she states the correct address three paragraphs earlier in her complaint.  *See* ECF 1 at pg. 6, ¶ 8.

10

due process, the Eighth Circuit has held "[t]he exercise of specific jurisdiction is permissible if a defendant purposefully directs its activities at residents of the forum state, and the litigation results from alleged injuries that 'arise out of or relate to' those activities[.]'" *Myers v. Casino Queen, Inc*., 689 F.3d 904, 912 (8th Cir. 2012) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)).  Krumm alleges, and Kittrich concedes, that it conducted business in Missouri by marketing and selling the repellant in the state.  *See* ECF 1 at pg. 6.  Further, Krumm purchased and used the repellant—the factual predicate for her alleged injury—in Missouri.  ECF 14 at pg. 16.  Viewing the evidence in the light most favorable to Krumm, I conclude that she has satisfied her "minimal" prima facie burden of establishing the Court's specific jurisdiction over Kittrich as to her individual claims.  *K—V Pharm. Co. v. Uriach & CIA, S.A*., 648 F.3d 588, 591–92 (8th Cir. 2011).

However, Kittrich argues that Krumm's connection to Missouri, standing alone, is insufficient to establish the Court's specific jurisdiction over the claims brought on behalf of the non-Missouri class members.  Kittrich contends that the non-resident class members individually lack connections to this forum, so exercising jurisdiction over those claims would "evade the limitations of due process and Missouri's long-arm statute."  ECF 14 at pg. 19.

Kittrich's jurisdictional argument relies principally on *Bristol-Myers*, 137 S. Ct. 1773 (hereafter "*BMS*").  In *BMS*, 86 California residents and 592 non-California residents filed a consolidated mass tort action in California state court against a non-resident pharmaceutical company.  *Bristol-Myers*, 137 S. Ct. at 1778. The Supreme Court held that the California court's exercise of personal jurisdiction over the claims of the out-of-state plaintiffs violated due process, reasoning:  "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims."  *Id*. at 1781 (emphasis in original).  However, the Court did not clarify whether the holding of *BMS* extended to putative class actions,[3] giving rise to a split in this District (and elsewhere) which the Eighth Circuit has yet to address.  *Compare Swinter Grp., Inc. v. Serv. Of Process Agents, Inc.*, No. 4:17-CV-2759 RLW, 2019 WL 266299, at *2 (E.D. Mo. Jan. 18, 2019) (declining to extend *BMS* to class actions), *with In re Dicamba Herbicides Litig*., 359 F. Supp. 3d 711, 723 (E.D. Mo. 2019) (extending *BMS* to class actions).  After a thorough review, I agree with the "better reasoned decisions" of the numerous courts across

---

[3] "The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."  *Bristol-Myers*, 137 S. Ct. at 1789 n. 4 (Sotomayor, J., dissenting).

12

the country[4] that have declined to extend *BMS* to the class action context.  *Swinter*,

2019 WL 266299, at *3.

In a consolidated mass tort action, as in *BMS*, each plaintiff is a real party in

interest to independent lawsuits.  Accordingly, in mass tort actions, the plaintiffs

must independently establish the jurisdictional prerequisites to pursue their

individual claims.  *Bristol-Myers*, 137 S. Ct. at 1781.  Here, by contrast, there is

only one lawsuit, brought by one named plaintiff, so there is just one 'party' for

purposes of determining the Court's jurisdiction.  *Id*.; *see also Molock v. Whole*

*Foods Mkt., Inc.,* 297 F.3d 114, 126 (D.D.C. 2018).  "Nonnamed class members . .

. may be parties for some purposes and not for others."  *Devlin v. Scardelletti*, 536

U.S. 1, 9-10 (2002).  While absent class members are considered 'parties' in

certain procedural respects, such as being bound to certified class action

settlements, "[a]bsent class members are not parties for purposes of determining

---

[4] *See, e.g.*, *Swinter*, 2019 WL 266299, at *2; *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 815, 819
(N.D. Ill. 2018); *Morgan v. U.S. Xpress, Inc.*, No. 3:17-CV-00085, 2018 WL 3580775, at *5
(W.D. Va. July 25, 2018); *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310 (D. Minn. 2018);
*Becker v. HBN Media, Inc.*, No. 18-60688-CIV, 2018 WL 3007922, at *3 (S.D. Fla. June 6,
2018); *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, No. 617CV1734ORL37KRS,
2018 WL 1701994, at *6 (M.D. Fla. Apr. 4, 2018); *Molock*, 297 F. Supp. 3d; *Casso's Wellness
Store & Gym, L.L.C. v. Spectrum Lab. Prod., Inc.*, No. CV 17-2161, 2018 WL 1377608, at *4
(E.D. La. Mar. 19, 2018); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360
(N.D. Ga. 2018); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 09-2047,
2017 WL 5971622, at *12 (E.D. La. Nov. 30, 2017); *Swamy v. Title Source, Inc.*, No. C 17-
01175 WHA, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017); *Fitzhenry-Russell v. Dr.
Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *3 (N.D. Cal. Sept. 22,
2017); *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696 (BMC)(GRB), 2017 WL 4217115,
at *9 (E.D.N.Y. Sept. 20, 2017); *Spratley v. FCA US LLC*, No. 3:17-CV-0062, 2017 WL
4023348, at *8 (N.D.N.Y. Sept. 12, 2017).

whether there is complete diversity of citizenship in cases governed by substantive state law." *Al Haj v. Pfizer Inc*., 338 F. Supp. 3d 815, 820 (N.D. Ill. 2018) (citing *Scardelletti*, 536 U.S. at 10). If the residency of unnamed class members is not considered in determining diversity of citizenship, it follows that the same should not be considered in assessing the jurisdictional reach of Missouri's long-arm statute. *Id*. at 822. Indeed, "[e]ase of administration of class actions would be compromised by having to consider the citizenship of all class members, many of whom may even be unknown, in determining jurisdiction." *Scardelletti*, 536 U.S. at 10 (citing Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 1755, pp. 63–64 (2d ed. 1986)).

Kittrich's due process arguments are also unavailing. "Unlike a mass tort, Rule 23 provides procedural due process safeguards for class actions: numerosity, commonality, typicality, adequacy of representation, predominance, and superiority." *Swinter*, 2019 WL 266299, at *2. "Given these safeguards, due process concerns for the defendant in the class action context are far less compelling than in a mass tort such as *BMS*, where each joined plaintiff may make different claims requiring different responses." *Knotts v. Nissan N. Am., Inc*., 346 F. Supp. 3d 1310, 1334 (D. Minn. 2018). These safeguards "ensure that the defendant will be 'presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense.'" *Id.* (quoting *Sanchez v. Launch*

*Tech. Workforce Sols., LLC*, 297 F.3d 1360, 1366 (N.D. Ga. 2018)).  Kittrich must

already come to this forum to litigate Krumm's claims and the claims of the

Missouri subclass (pending certification), so "there is little hardship, as a

jurisdictional matter, for it to also litigate the nationwide class claims."  *Id*.; *see*

*also Sanchez*, 297 F.3d, at 1366 ("Because of the unitary nature of that class claim,

the Court perceives no unfairness in haling the defendant into court to answer to it

in a forum that has specific jurisdiction over the defendant based on the

representative's claim.").

     Finally, as a jurisprudential concern, it is highly unlikely that the Supreme

Court would have drastically limited the nationwide class action mechanism

without expressly stating its intent to do so:

> Indeed, *Bristol-Myers* characterized its holding as a "straightforward
> application . . . of settled principles of personal jurisdiction."  That
> characterization is hard to square with the extraordinary sea change in
> class action practice that [defendant's] reading of *Bristol-Myers* would
> prompt.  Had the Supreme Court truly sought to bar certification of
> nationwide or multistate *class* actions on due process grounds in all
> but the one or two States where the defendant is subject to general
> jurisdiction, it [is] implausible that it would have done so obliquely, in
> a *mass* action, and with the caveat that it was "leav[ing] open the
> question whether the Fifth Amendment imposes the same restrictions
> on the exercise of personal jurisdiction by a federal court" as the
> Fourteenth Amendment does "on the exercise of specific jurisdiction
> by a State."

*Al Haj*, 338 F. Supp. 3d at 819 (citing *Bristol-Myers*, 137 S. Ct. at 1783) (emphasis

in original); *see also Morgan*, 2018 WL 3580775, at *6 ("The Court is reluctant to

believe that the Supreme Court's 'straightforward application . . . of settled principles of personal jurisdiction' in [*BMS*] requires a substantial limiting of that valuable [class action mechanism].").  This holding thus "preserves the class action as an efficient mechanism for prospective plaintiffs to seek redress of their claims." *Knotts*, 346 F.3d at 1335.  Further, because I conclude that Kittrich does not have a substantive right to exclude the claims of the nonresident class members on the grounds that the Court lacks specific jurisdiction, this holding does not run afoul of the Rules Enabling Act.  *Id*. at 1334.  Accordingly, Kittrich's motion to dismiss for lack of personal jurisdiction is denied in full.

   C. <u>Sufficiency of the Pleadings</u>

   Kittrich next moves to dismiss Krumm's complaint in its entirety under Rule 12(b)(6) for failure to state a claim.  Kittrich contends that Krumm fails to provide sufficient factual support for the alleged ineffectiveness of the repellant, rendering her pleadings deficient under Rule 8(a)(2).  ECF 14 at pg. 9.  When reviewing a Rule 12(b)(6) motion, I assume the factual allegations of the complaint as true and construe them in the plaintiff's favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief "that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

16

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Krumm's factual allegations concerning the ineffectiveness of the repellant are supported by two scientific studies cited in her complaint: 1) the Consumer Reports study which purportedly gave the repellant an "overall effectiveness rating of 5 out of 100;" and 2) an independent laboratory test, commissioned by Krumm's counsel in early 2018, which "revealed that the [repellant] was ineffective in repelling Aedes mosquitoes and Culex mosquitoes." ECF 1 at pg. 3-4. These studies ostensibly conclude that the repellant does not repel mosquitoes as effectively, nor for as long of a duration, as the repellant's label suggests. *Id.* Accepting the pleaded allegations as true and drawing all reasonable inferences in Krumm's favor (including the inference that Krumm's repellant bottle contained the same formula as those tested in the studies[5]), I find that Krumm has alleged a sufficiently plausible factual basis to support her claimed injury. Kittrich will have an opportunity to contest the applicability, methodology, and results of Krumm's evidence—but those fact-intensive considerations are not properly resolved at this

---

[5] "[W]hether or not the proffered studies are applicable to [the supplement at issue] is a question of fact that I do not decide at this stage. The fact that these studies looked at products that shared the same active ingredients . . . makes Plaintiff's claim facially plausible." *Pearson v. Target Corp.*, 2012 WL 7761986, at *2 (N.D. Ill. Aug. 7, 2012).

stage in the proceedings.  Accordingly, Kittrich's motion to dismiss the complaint in its entirety under Rule 12(b)(6) is denied.

i.  <u>Count I</u>

In Count I, brought under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407, Krumm alleges Kittrich engaged in unfair or deceptive acts or practices in the manufacture and sale of its repellant.  Kittrich moves to dismiss, noting Krumm fails to specifically allege she purchased the repellant for "personal, family, or household purposes"—a requisite element of an MMPA claim.  *See Ward v. W. Cty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. banc 2013).  However, in the 'Parties' section of the complaint, which Krumm incorporates by reference in Count I, Krumm states that she personally purchased the repellant and "used the [repellant] according to its directions[.]"  Accordingly, I can reasonably conclude Krumm purchased the repellant for personal purposes. Kittrich's motion to dismiss Count I is therefore denied.

ii.  <u>Count II</u>

Krumm brings Count II of her complaint for breach of express warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.* Krumm alleges the repellant's label provides express written warranties that "[the repellant is] an 'insect repellent' that 'keeps away mosquitoes' and 'repels for hours.'"  Krumm further alleges the repellant expressly warrants its period of

18

effectiveness is "2-3 hours."  Kittrich disputes that label provides any written warranties, and accordingly moves to dismiss for failure to state a claim.

"The MMWA grants relief to a consumer 'damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'" *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)).  The MMWA defines the term "written warranty" as:

> [A]ny written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time . . . which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6)(A).  In its motion, Kittrich breaks down the alleged warranties on the label into isolated fragments, then points out how those individual fragments do not warrant that the repellant will "meet a specified level of performance over a specified period of time."  ECF 16 at pg. 8.  However, the statute does not mandate that the "written affirmation" be contained in a single sentence.  I therefore read the label as a whole in determining whether it contains any written warranties.  *Cf. Bourbia v. S.C. Johnson & Son, Inc*, 375 F. Supp. 3d 454 (S.D.N.Y. 2019).

19

Unlike an "All Natural" label on a bag of chips,[6] or a vague "Restores Enamel" label on a bottle of mouthwash,[7] the representations on the repellant's label are not mere product descriptions.  The label claims the repellant will meet a specified level of performance—"repel mosquitoes"—for a specified period of time—"for hours".  Further, implicit in the instruction to "apply every 2-3 hours" is a warranty that the repellant will repel mosquitoes for that specified period of time; otherwise, the instruction would be completely meaningless.  Accordingly, because the label meets both prongs of the written warranty definition, Krumm adequately states a claim for breach of express warranty under the MMWA and Kittrich's motion to dismiss Count II is denied.  *See Bourbia*, 375 F. Supp. 3d, at 465 (denying an insect repellant manufacturer's motion to dismiss plaintiff's substantively identical breach of warranty claim under the MMWA).

iii.   Count IV

Count IV of Krumm's complaint alleges breaches of both an implied warranty of merchantability and fitness for a particular purpose.  Kittrich contends it validly disclaimed[8] all implied warranties, while Krumm argues the "except as

---

[6] *See, e.g., In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013); *Wilson v. Frito–Lay N. Am., Inc.*, No. 12–CV–1586, 2013 WL 1320468, at *15 (N.D. Cal. Apr. 1, 2013).

[7] *See Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) (holding that a "Restores Enamel" label on a bottle of mouthwash was a product description, and not a written warranty, because the label did not specify a period of time of effectiveness).

[8] "Kittrich makes no warranties of merchantability or of fitness for a particular purpose, nor any other express or implied warranty except as stated above."  ECF 14 at pg. 4.

stated above" addendum on the disclaimer should be interpreted literally; as in, the disclaimer should not be read to operate against any implied warranty derived from text physically located above the disclaimer on the label.

Under Mo. Stat. Ann § 400.2-316(2), "an implied warranty of merchantability may be disclaimed by a 'conspicuous' writing which mentions the term 'merchantability'; and the implied warranty of fitness may be excluded by a conspicuous writing." *Karr-Bick Kitchens & Bath, Inc. v. Gemini Coatings, Inc.*, 932 S.W.2d 877, 879 (Mo. App. 1996).  A writing is 'conspicuous' if the Court determines that "a reasonable person against which it is to operate ought to have noticed it."  Mo. Ann. Stat. § 400.1-201(10).

The disclaimer on the repellant's label explicitly disclaims the implied warranties of merchantability and fitness for a particular purpose.  ECF 1 at pg. 2. A reasonable person would have noticed the disclaimer, as it follows bolded and capitalized text stating **LIMITATION OF LIABILITY**.  *Id*.  Indeed, Krumm states that she "carefully read the [repellant's] labeling."  ECF 1 at ¶ 7.  I reject Krumm's strained interpretation of the disclaimer because there simply cannot be an implied warranty "*stated* above"—implied warranties are inherently not stated at all, as they are "derive[d] . . . by implication or inference from the circumstances of the transaction."  *Horner v. David Distributing Co.*, 599 S.W. 2d 100, 102 (Mo. App. 1980).  Accordingly, the repellant's conspicuous disclaimer of the implied

warranties of merchantability and fitness bars any claim premised on the repellant's alleged inability to "pass without objection in the trade under the contract description," no matter where such implied warranty may be drawn from on the repellant's label.  Mo. Ann. Stat. § 400.2-314(2)(a).  Count IV is therefore dismissed with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint [11] is **GRANTED** only as to Count IV, and **DENIED** as to all other grounds.

This case will be set for a Rule 16 scheduling conference by separate order.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 17th day of December, 2019.

22